22728. DUKES et al. v. CAIRO BANKING COMPANY et al.

508

*Bell & Baker,* for plaintiffs in error.

*Cain & Smith, O. B. McElvy,* contra.

ALMAND, Justice. The Cairo Banking Company and the Hand Trading Company brought their action in the Superior Court of Grady County against Mrs. Trudie Mae Dukes and her four named sons. In substance the petition alleged that: Mrs. Dukes is the widow of H. D. Dukes who died intestate in January of 1964; the four named sons are the sons of H. D. Dukes and each of the sons is over 21 years of age; there has been no administration of the estate of H. D. Dukes and the widow and sons have agreed that there will be no administration; at his death, H. D. Dukes owned certain described land valued at $45,000 to $50,000, 19 acres of which was unencumbered, and the remaining 225 acres subject to a security deed executed by H. D. Dukes to secure an indebtedness of $4,136.98; at his death, H. D. Dukes owned certain described personal property valued at $5,000; a petition for year's support has been filed and citation "issued on said application and is being advertised in the legal organ of this county, and all parties concerned are required to show cause on the first Monday in April 1964, why said application should not be granted, and unless interfered with by this court, said application will be granted at the April term of the ordinary's court of said county thereby transferring and placing into the widow, Mrs. Trudie Mae Dukes, all of the property owned by H. D. Dukes at his death"; petitioner Cairo Banking Company holds an unpaid judgment against J. B. Dukes, one of the named sons of H. D. Dukes, for $827.00 plus interest, costs and attorney's fees; petitioner Hand Trading Company holds two unpaid judgments against J. B. Dukes for $2,637.76 plus interest, costs and attorney's fees; the application for year's support is not for the purpose of setting

aside a reasonable amount to the widow, "but is in furtherance of the scheme of the widow and sons of the deceased to place all of the estate of the deceased in the name of the widow for the purpose of defeating, hindering and defrauding the judgment creditors of the defendant, J. B. Dukes"; $3,000 would be a sufficient amount to set aside to the widow for year's support; the attempt to set aside all of the property of the deceased as year's support represents a fraud on the petitioners who are judgment creditors of J. B. Dukes; petitioners are not judgment creditors of the deceased and therefore have no way of filing objections to the application for year's support; if the year's support is granted, it will render J. B. Dukes insolvent and make it impossible for petitioners to recover their judgments, "all of which was known to the widow at the time said application was made"; the appraisers made no effort to place a value on the property of the deceased, but without fixing any value, assigned all the property to the widow, and because no value was fixed and an exorbitant amount was set aside to the widow in an attempt to defraud the creditors of J. B. Dukes, the proceeding for a year's support is invalid; petitioners have no adequate remedy at law; on his father's death, the defendant, J. B. Dukes, became vested with a one-fifth interest in said property and that the value of this interest is between $7,000 and $8,000, an amount sufficient to pay the judgments of the petitioners and leave a substantial surplus. The prayers of the amended petition were for: (1) process; (2) temporary and permanent injunctions enjoining the defendants from continuing with the application for a year's support; (3) an order declaring the returns of the appraisers to be null and void; (4) the appointment of commissioners to sell the interest of the deceased in the described property and (5) that one-fifth of the proceeds be subjected, as the interest of J. B. Dukes, to petitioners' judgments against J. B. Dukes.

The defendants filed general and special demurrers to the amended petition. After a hearing, the trial court entered an order overruling all the demurrers. The whole thrust of the numerous demurrers filed by the defendants is to attack the petition on four grounds as failing to state a cause of action.

510

■ The petitioners allege that they are judgment creditors of J. B. Dukes, who has a one-fifth vested interest as an heir of his deceased father; that if the award of the appraisers in his mother's application for a year's support is allowed to become final in the court of the ordinary, it will amount to a conveyance of his one-fifth interest and render him insolvent and the judgment creditors will be unable to collect their judgments. They further assert that the law does not permit them to caveat or object to the return of the appraisers in the court of the ordinary and only a court of equity can grant the relief they seek.

*Code* § 28-103 provides: "Courts of equity shall assist creditors in reaching equitable assets in every case where to refuse interference would jeopardize the collection of their debts." *Code* § 28-104 provides: "Creditors may attack as fraudulent a judgment or conveyance, *or any other arrangement* interfering with their rights, either at law or in equity." (Emphasis supplied.) "A Court of Equity will aid a judgment creditor who has pursued his legal remedies to every available extent, to reach a distributive share of an estate to which an insolvent debtor is entitled in his own right, in the hands of an administrator held in trust for such judgment debtor." *Sayre v. Flournoy,* 3 Ga. 541 (1). "Where by her will a testatrix gave to her husband a life estate in land, and directed that at the death of her husband the executors of the will should sell the property, and further provided that the proceeds of such sale should be divided into a stated number of equal parts and distributed in equal shares to nine named devisees, the named distributees took a vested interest in the property. Where the claim of creditors of one of the devisees was reduced to judgment upon which execution was issued, and the defendant in fi. fa. was afterwards adjudicated a bankrupt on his voluntary petition, and caused his interest in the land set apart to him as a homestead by the ordinary of the county of his residence, and this homestead was affirmed and allowed by the referee in bankruptcy, the property being released from the custody and jurisdiction of the bankruptcy court, the defendant's interest in the land devised, relatively to these judgment creditors, became equitable assets of his, inasmuch as his interest in the property could not be seized

or levied upon at law; and a court of equity, which is required to favor the rights of creditors and which is clothed with the power to assist creditors in reaching equitable assets, should, upon proper application, appoint a receiver and grant injunctive relief to prevent the assets from being endangered; and the receiver appointed under the prayers of such a petition should either bring to sale the defendant's interest in the estate, or take such steps as will, subsequently to the death of the life tenant, preserve them and apply them to the debts of the judgment creditors." *Bank of Statesboro v. Waters,* 165 Ga. 848 (1, 2) (142 SE 156). "It appearing from the petition that the defendant in execution, as a legatee under the will of his father, had some interest in the estate which a court of equity might protect for the plaintiff's judgment, but that under the terms of the will such interest of the son was not subject to levy, and it further appearing that the plaintiff had no remedy at law as complete and effectual as equitable relief, the petition showed cause for relief in a court of equity." *Gormley v. Cleaveland,* 187 Ga. 457 (1) (200 SE 793).

The first ground of the demurrers is that the granting of the relief prayed for by the petitioners would oust the court of ordinary of the exclusive jurisdiction with which it is vested by statute. It is true that the petition does contain prayers that commissioners be appointed to sell the property of the deceased and that the widow be enjoined from proceeding with the application for year's support. However, the gist of the relief requested is the barring of the defendants from consummation of the allegedly fraudulent scheme. A court of equity can grant this relief without usurping the jurisdiction of the ordinary's court. One way to accomplish this result would be to declare the return of the appraisers in the court of ordinary null and void, and enjoin the defendants from using such year's support proceeding as a device to defraud the creditors of the defendant son. The widow would be free to apply to the court of ordinary for a reasonable amount for year's support. This ground of the demurrers is without merit.

■ The case of *McGahee v. McGahee,* 204 Ga. 91 (48 SE2d 675) is pertinent to a consideration of the remaining grounds of

defendants' demurrers. The *McGahee* case appears to be the only Georgia case where a proceeding for year's support was attacked on the ground that the proceeding was being used to defraud a creditor of an heir of the deceased, and the case is cited by both sides in the case at bar to support their position. In the *McGahee* case, the plaintiff wife was suing her husband for alimony and for support for herself and her three children. In her petition, it was alleged that the defendant husband had received land valued at $15,000 under the will of his father, had collected rents from the land, and had then participated in a fraudulent scheme with his father's widow and allowed the widow to have the land valued at $15,000 plus additional property valued at $85,000 set aside as year's support, leaving the defendant insolvent and placing his property beyond the reach of the plaintiff's claim for support for herself and her children. The *McGahee* case held that the petition stated a cause of action in so far as it affected the property devised to the son by the will of the father.

By comparing the *McGahee* case and the case at bar it is seen that in the former there was a will, the defendant had taken possession of the land, and there was a final judgment of the ordinary's court granting the year's support, while in the case now before us, there was no will, the defendant son had not taken possession of any land in the estate of the father, and there was no final judgment.

In the second ground of the demurrers it is asserted that plaintiffs' petition is premature because no final judgment has been rendered by the ordinary's court setting aside the entire estate for year's support. In the *McGahee* case the attack was on the final judgment. However, we do not think this distinction between the *McGahee* case and the case at bar to be a critical one. The plaintiffs allege in their petition that citation has been issued on the application for year's support and that advertisement was being made in the legal organ of the county. In *Howell v. Howell*, 190 Ga. 371 (1) (9 SE2d 149) it is said: "Where after a return of appraisers in a proceeding for a year's support the ordinary issues citation and publishes notice as required by law, if persons at interest desire to object they must

file their objections in the court of ordinary at or before the term to which the citation is made returnable; and unless objections are so filed, the return should then be recorded by the ordinary and thereafter given effect as a judgment binding upon all persons concerned." The creditors of an heir are not interested parties who may enter objections to the proceeding for year's support. *McGahee v. McGahee*, 204 Ga. 91, 96, supra. Applying the above stated rules to the facts alleged in the petition, it is seen that it is only a matter of time until the return becomes the judgment of the ordinary. The proper procedure has been followed and the plaintiffs are not interested parties who can object to the proceeding. In this situation we see no reason why the plaintiffs must wait to act until the return is made the judgment of the ordinary. This is not a case seeking an injunction because there is a mere apprehension of danger or injury. See *City of Nashville v. Snow*, 204 Ga. 371, 379 (49 SE2d 808) and cases there cited. The plaintiffs have alleged solid reasons to justify their apprehensions. *Levine v. Perry*, 204 Ga. 323 (1) (49 SE2d 820). Their is no merit in the contention that the petition is premature.

■ In the third and fourth grounds it is urged by the defendants that no interest in the property of the deceased has vested in the defendant son and that there can be no fraudulent conveyance until the property has vested in him.

We will consider first the contention that no interest in the estate had vested in the son. The defendants cite the *McGahee* case, pointing out that the property in that case had clearly vested in the son since he had taken possession before allowing it to be set aside in the year's support proceeding. However, possession was necessary for vesting in the *McGahee* case because "no devise or legacy passes the title until the assent of the executor is given to such devise or legacy," *Code* § 113-801, and possession created a presumption that the executor had assented to the devise. *Code Ann.* § 113-802; Ga. L. 1958, pp. 657, 665. In the case at bar the father of the defendant son died intestate. Thus we turn to the laws of descent and distribution to determine whether any interest in the estate of the father vested in the defendant son. Under the provisions of *Code*

■

§ 113-903, children of the intestate inherit equally from him, and the widow of the intestate is entitled to a child's part in the estate unless the shares exceed five in number. *Code Ann.* § 113-901 (Ga. L. 1943, pp. 236, 237) provides: "Upon the death of the owner of any estate in realty, which estate survives him, the title shall vest immediately in his heirs at law, subject to be administered by the legal representative, if there is one, for the payment of debts, the purposes of distribution, and other purposes provided for in this Title." Applying these Code sections to the facts alleged in the petition it is seen that a one-fifth interest in the unencumbered land of the deceased father vested in the defendant son upon the father's death. The fact that the interest of the son may later be divested by payment of the costs of administration and debts does not change the fact that it is now vested.

■ The contention that there can be no fraudulent conveyance until the property has vested in the defendant son is equally without merit. This court pointed out in the *McGahee* case that an inchoate or equitable title is an interest in land which can be the subject matter of a fraudulent conveyance. *McGahee v. McGahee,* 204 Ga. 91, 95, supra. The equitable interest of the defendant son, J. B. Dukes, in the encumbered land of his deceased father can be the subject matter of a fraudulent conveyance, and the contention that the land must have vested in him before he can fraudulently convey it is without merit.

The allegations of the petition being sufficient to show a cause of action for some of the equitable relief prayed for, it was not subject to dismissal on general demurrer. *Terry v. Chandler,* 172 Ga. 715 (1) (158 SE 572).

The trial court did not err in overruling the special demurrers to the petition.

*Judgment affirmed. All the Justices concur.*